226 P.3d 783 (2010)
STATE of Washington, Respondent,
v.
Ryan Joseph NYEGAARD, Appellant.
No. 37829-9-II.
Court of Appeals of Washington, Division 2.
February 23, 2010.
Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
Stephen D. Trinen Pierce County Prosecutors Office, Tacoma, WA, for Respondent.

PUBLISHED OPINION
HUNT, J.
¶ 1 Ryan Joseph Nyegaard appeals his jury conviction for unlawful methamphetamine possession with intent to deliver and the accompanying firearm sentencing enhancement. He argues that (1) the search of his vehicle was unlawful under Arizona v. *784 Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009); (2) the evidence was insufficient to support his conviction and his firearm sentencing enhancement; and (3) the prosecutor committed misconduct by mischaracterizing certain testimony in closing argument.[1] We affirm.

FACTS
¶ 2 On April 24, 2007, Lakewood Police Officer Nicholas McClelland stopped a vehicle driven by Gregory Carter for making an unlawful turn and speeding. McClelland and Officer Eric Bell approached the car and saw Ryan Nyegaard in the front passenger seat and another man behind him in the backseat. Engaging Nyegaard in conversation, Bell noticed the smell of alcohol on his breath, told him frequently to stop moving his hands to his sides, and asked Nyegaard to step out of the car.[2]
¶ 3 When Nyegaard stepped out of the vehicle, his left hand dropped to the side of the passenger seat, and Bell heard a clanging noise that sounded like glass hitting metal. Once Bell had secured Nyegaard's hands behind his back and was holding onto him, Bell looked at the spot where Nyegaard had moved his hand; on the floorboard where the front passenger would have placed his feet, Bell found a glass methamphetamine pipe that had burn marks on it and contained a residue. The officers arrested Nyegaard for use of drug paraphernalia and searched him and the vehicle's other occupants incident to their arrests.[3] On Carter, McClelland found several bundles of cash totaling approximately $3,000.
¶ 4 McClelland also searched the vehicle. Wedged between the floorboard and the front passenger seat, close to the center of the car, McClelland discovered (1) a firearm; (2) a brown paper bag, containing two baggies containing 0.2 grams of methamphetamine each, three large rocks and one small rock of crack cocaine, and three one-ounce plastic bags of powder cocaine worth several thousand dollars; (3) several cellular telephones; and (4) a second glass pipe that appeared to have been used.
¶ 5 The State charged Nyegaard with unlawful methamphetamine possession with intent to deliver, with a firearm sentencing enhancement.[4] Nyegaard moved to dismiss for lack of evidence, but he never challenged the legality of the vehicle search. The jury convicted him of unlawful possession of methamphetamine with intent to deliver, with the firearm sentencing enhancement. Nyegaard appeals.[5]

ANALYSIS

I. Waiver
¶ 6 Nyegaard argues that he may challenge the vehicle search for the first time on appeal, citing a differently composed panel's decision in State v. McCormick, 152 Wash.App. 536, 216 P.3d 475 (2009), petition for review filed Oct. 27, 2009 (set at Supreme *785 Court for March 2, 2010).[6] But previously we held that a defendant waives his right to appeal the admission of evidence seized in a vehicle search incident to arrest if he fails to challenge that search below.[7]State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), review granted, 168 Wash.2d 1005, 226 P.3d 781 (2010). Here, as in Millan, Nyegaard failed to challenge the vehicle search below on any grounds.[8]See Millan, 151 Wash. App. at 495, 212 P.3d 603. Accordingly, under Millan, Nyegaard has waived this issue and cannot raise it for the first time on appeal.[9]

II. Sufficiency of Evidence
¶ 7 Nyegaard also argues that the evidence was insufficient to support both his possession conviction and the firearm enhancement[10] in that the State failed to establish that (1) he constructively possessed the contraband or the firearm,[11] (2) he intended to deliver the contraband, or (3) he acted as an accomplice. Again, we disagree.
¶ 8 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of a crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. State v. Brown, 162 Wash.2d 422, 428, 173 P.3d 245 (2007). Circumstantial evidence and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). And we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004).
¶ 9 To establish constructive possession, the State had to show that Nyegaard had dominion and control over the firearm and the contraband. See State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969). This control need not be exclusive, but the State must show more than mere proximity. State v. George, 146 Wash.App. 906, 920, 193 P.3d 693 (2008). The State presented evidence that both the brown paper bag and the firearm had been within Nyegaard's reach while a passenger in the car because they were located under his seat and, therefore, closer to him than to the other occupants.
*786 ¶ 10 The State also presented evidence that Nyegaard had dropped the glass pipe into roughly the same passenger area of the car from which police later recovered the bag and the firearm. And before Bell heard Nyegaard drop the glass pipe, Bell had watched Nyegaard continually move his hands, including out of sight, which had prompted Bell to instructed Nyegaard repeatedly to keep his hands visible. From this evidence, the jury could have reasonably concluded that Nyegaard had placed the firearm and bag containing the drugs at his side or at least had manipulated them in some way to hide them, thereby exercising dominion and control over both the firearm and the contraband.
¶ 11 But proof of mere possession of a controlled substance is not sufficient to show intent to deliver. State v. Campos, 100 Wash.App. 218, 222, 998 P.2d 893 (2000). The State must also present evidence suggesting an intent to deliver independent of the evidence of possession. State v. Goodman, 150 Wash.2d 774, 783, 83 P.3d 410 (2004). Here, the police recovered a large amount of drugs, including some methamphetamine, bundles of cash, three cell phones, and a firearm. The State also presented testimony that drug dealers often arm themselves with firearms to protect their drugs and that they often carry cell phones to communicate with buyers. From this, a reasonable jury could have concluded that Nyegaard intended to deliver the drugs to a third party.
¶ 12 Although some of this evidence, such as the cash, was found on another person, under RCW 9A.08.020(1), "A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable." To convict on the basis of accomplice liability, the State had to show that Nyegaard aided or agreed "to aid another person in committing a crime by associating [himself] with that criminal undertaking, participating in the crime as something [he] desires to accomplish." State v. McPherson, 111 Wash.App. 747, 757, 46 P.3d 284 (2002). Nyegaard was traveling with two others in a vehicle late at night. Nyegaard possessed a firearm and contraband, and Carver carried large amounts of cash in bundles on his person. From this, a reasonable jury could conclude that Nyegaard had either aided or agreed to aid another in the commission of the crime, namely, possession of methamphetamine with intent to deliver.

III. Statement of Additional Grounds
¶ 13 Finally, citing an alleged inconsistency between defense counsel's and the State's closing arguments, Nyegaard contends that the prosecutor committed misconduct by misstating where the officer found the glass pipe. The trial court, however, instructed the jury that the parties' closing arguments are not evidence and that the jury should consider only witness testimony and exhibits during deliberations. Nyegaard presents no evidence this did not occur. And we presume that the jury followed the trial court's instructions. State v. Foster, 135 Wash.2d 441, 472, 957 P.2d 712 (1998).
¶ 14 Affirmed.
I concur: BRIDGEWATER, J.
HOUGHTON, P.J. (dissenting).
¶ 15 In State v. McCormick, Judges Houghton (writing), Armstrong (concurring), and Penoyar (concurring) held that defendants may raise an admissibility of evidence challenge on appeal without having done so in the trial court, following a change in the law under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). McCormick, 152 Wash.App. 536, 540, 216 P.3d 475 (2009). The McCormick opinion called into question another panel's decision in State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), which denied a similar challenge on appeal.
¶ 16 Following McCormick, in State v. Harris, another panel, (Judges Armstrong (writing), Penoyar (concurring), and Quinn-Brintnall (dissenting)), declined to hold that a defendant waived his right to challenge a search under Gant by failing to bring a then meritless motion to suppress before the pre-Gant trial. Harris, 154 Wash.App. 87, 98-99, 224 P.3d 830 (2010). More recently, in State v. Burnett, ___ Wash.App.2d ___, ___ P.3d ___, 2010 WL 611498 (2010), a third *787 panel, (Judges Penoyar (writing), and Houghton and Van Deren, concurring), followed McCormick. To date, Judges Quinn-Brintnall, Bridgewater, and Hunt have followed the Millan analysis and Judges Houghton, Armstrong, Van Deren, and Penoyar have followed the McCormick and Harris analyses.
¶ 17 Under RCW 2.06.040, the Court of Appeals hears cases in three-judge panels. Because we do not sit en banc, our opinions on the issue of waiver in post-Gant admissibility of evidence challenges lack uniformity. Justice demands that the outcome of similar cases on the same issue should not depend on the composition of randomly selected three-judge panels. This lack of uniformity should be addressed by our Supreme Court as soon as practical.
¶ 18 For the reasons I set forth in McCormick, Ryan Nyegaard may raise this issue on appeal. Therefore, I dissent.
NOTES
[1] Nyegaard raises this issue in his pro se statement of additional grounds for review. RAP 10.10.
[2] The back seat passenger was also moving his hands, but he kept his hands in the vicinity of his lap and did not reach under the seat in front of him.
[3] The officers apparently arrested the other occupants on drug charges following the vehicle search.
[4] The State also charged Nyegaard with unlawful possession of cocaine with intent to deliver; the trial court declared a mistrial as to that count.
[5] We advised counsel to be prepared at oral argument to address Gant, which the United States Supreme Court issued after the parties had submitted their initial briefing. During argument, the State questioned whether we had authority to order the parties to address additional issues sua sponte. After oral argument, we ordered the parties to file briefs addressing (1) the applicability of Gant and Patton, which our state Supreme Court issued the day of oral argument; and (2) our authority to order parties to address issues they did not raise in their briefs. The Rules of Appellate Procedure (RAPs) and case law give us authority to raise additional issues and to require briefing. RAP 1.2(a), RAP 10.1(h), RAP 12.1(b); see also Greengo v. Public Employees Mut. Ins. Co., 135 Wash.2d 799, 813, 959 P.2d 657 (1998) (appellate court may raise an issue sua sponte and rest its decision on that issue).
[6] Nyegaard also argues that Gant and Patton apply retroactively to his case. Because we hold that Nyegaard waived the search issue, we need not address this argument.
[7] We agree with our dissenting colleague that we cannot resolve this split among our court's varying three-judge panels on the issue of waiver in post-Gant cases similar to this one. Only our Supreme Court can resolve this split. And only the legislature can amend the statute to allow us to sit en banc to resolve this and other internal splits among panels.
[8] We note that while this case was pending, a differently composed panel of our court issued State v. Harris, 154 Wash.App. 87, 224 P.3d 830 (2010). The majority in Harris followed McCormick rather than Millan. Harris, at 98, 224 P.3d 830 (Quinn-Brintnall, J. dissenting).
[9] The Washington State Supreme Court filed Patton on the day of Nyegaard's oral argument in our court. While this case was still under consideration, our Supreme Court filed State v. Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009). In Patton, our Supreme Court held that our state constitution severely restricted the circumstances under which officers can conduct lawful searches incident to arrest. Patton, 167 Wash.2d at 384, 219 P.3d 651. In Valdez, the court held that both the state and federal constitutions limited such searches. 167 Wash.2d at 765, 777-78, 224 P.3d 751.

In contrast with the facts here and in Millan, however, both Valdez and Patton challenged the searches incident to arrest at the trial court level. Valdez, at 766-67, 224 P.3d 751; Patton, 167 Wash.2d at 385, 219 P.3d 651. Thus, our Supreme Court did not address waiver, at issue here, and, therefore, neither of these cases affects our rationale or holding in Millan.
[10] Although Nyegaard initially challenges the trial court's denial of his Knapstad motions, State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986), we review this issue as we would a sufficiency of the evidence issue. State v. Israel, 113 Wash. App. 243, 269 n. 6, 54 P.3d 1218, review denied, 149 Wash.2d 1013, 69 P.3d 874 (2003).
[11] Although Nyegaard asserts the that State failed to establish the required "nexus" between him and the firearm, his sole firearm argument is that the evidence was insufficient to show constructive possession of the firearm. Thus, with respect to the firearm enhancement, we address only this issue. RAP 10.3(a)(6).