[No. 38540-6-II.   Division Two.   May 11, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE RAY JOHNSON, *Appellant*.

84

*Rebecca W. Bouchey*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen, Deputy*, for respondent.

¶1 HUNT, J. — Jesse Ray Johnson appeals his convictions for two felony counts of unlawful possession of a controlled substance (heroin and cocaine), counts I and V, and one count unlawful use of drug paraphernalia, count II.[1] He argues that the trial court should have suppressed the evidence seized during a vehicle search incident to his arrest because (1) the officer had unreasonably "seized" the illegally parked vehicle in which he was a passenger, which led to discovery of his outstanding arrest warrants; and (2) the later vehicle search incident to his arrest was unlawful under the Fourth Amendment to the United States Constitution, as recently interpreted in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). We reject these arguments and affirm.

## FACTS

### I. TRAFFIC STOP, WARRANT ARREST, AND INCIDENT VEHICLE SEARCH

¶2 Working as a citywide truancy enforcement officer for the Tacoma School District, Tacoma Police Patrol Officer Jared Williams was patrolling in a public park adjacent to a high school on a school day morning when he observed an occupied vehicle in a parking spot designated for persons with disabilities;[2] the vehicle did not display a disabled placard or a disabled license plate, required for parking in the space.[3] Without activating his emergency lights or

---

[1] Johnson does not appeal his conviction for count IV, obstructing a law enforcement officer, arising from the same incident. Johnson was acquitted on count III, possessing dangerous weapons. *See* Clerk's Papers at 32.

[2] RCW 46.61.581.

[3] RCW 46.61.582.

siren, he parked his patrol car at an angle, about 10 to 15 feet behind the vehicle, for officer safety.[4]

¶3 The vehicle's windows were "steamed up." Verbatim Tr. of Proceedings (VTP) (Aug. 4, 2008) at 19. Williams observed a female in the driver's seat and a male, Johnson, apparently sleeping, in the passenger's seat. He also observed that the female driver had "numerous sores on her arms, . . . appeared to be kind of be what [officers] refer to as tweaking, [and] was kind of uncontrollably moving involuntarily." VTP (Aug. 4, 2008) at 22-23. In addition to enforcing the disabled parking violation, Williams suspected possible drug use and decided to check to see whether the vehicle's occupants were "okay." VTP (Aug. 4, 2008) at 24.

¶4 Williams approached the female driver and asked why she and her passenger were at the park and why they had parked in a disabled spot. When he asked for identification, she provided only a name. Telling her that he would return, he went back to his patrol car and ran a records inquiry on the name. Williams did not, however, tell the driver or her passenger that they could not leave.

¶5 Williams' inquiry revealed a restraining order that prohibited a named male from having contact with this female driver. Williams returned to the patrol car to determine whether the male passenger was the same person listed on the restraining order. Williams asked for, but did not demand, identification from the passenger. The passenger told Williams that his name was "Duane K. Johnson" and provided a birth date. VTP (Aug. 4, 2008) at 10.

¶6 Williams ran another records inquiry, determined that "Duane K. Johnson" was a possible alias for Jesse

---

[4] At his suppression hearing, Johnson testified that Williams had parked his patrol car in a manner that blocked the parking lot entrance. Williams testified that he had parked at an angle 10 to 15 feet behind the vehicle, "for officer safety, just in case either of the subjects in the vehicle was armed, [which] gave [him] an advantage of them not exactly knowing where [he] was at, and [his] car would provide cover, if needed." Verbatim Tr. of Proceedings (Aug. 4, 2008) at 19. Williams did not assert, however, that in so doing he had been attempting to block the vehicle.

Johnson, who had an outstanding felony warrant and "numerous" bench warrants for his arrest,[5] VTP (Aug. 4, 2008) at 12; VTP (Nov. 5, 2008) at 31, and discovered that Johnson's booking photos matched the vehicle's male passenger. Williams returned to the vehicle, arrested Johnson on the warrants, handcuffed him, advised him of his *Miranda*[6] rights, and placed him in the back of his patrol car. Williams then asked the female driver to step out of the vehicle, patted her down for weapons, and asked her to stand near his patrol car while he searched the vehicle incident to Johnson's arrest.

¶7 Inside the vehicle, Williams discovered a small screw-top container (which tested positive for traces of heroin), one small rock of crack cocaine (found inside the screw-top container), and miscellaneous drug paraphernalia. He then arrested the female driver, advised her of her *Miranda* rights, placed her in the back seat of his patrol vehicle, and continued to search the vehicle incident to arrest.

## II. PROCEDURE

¶8 The State charged Johnson with unlawful possession of a controlled substance, cocaine, count I; unlawful use of drug paraphernalia, count II; unlawful possession of a dangerous weapon, count III; obstructing a law enforcement officer, count IV; and unlawful possession of a controlled substance, heroin, count V. Johnson moved to suppress the evidence, arguing that Williams' initial "traffic stop" was pretextual and an unconstitutional seizure. Clerk's Papers at 8. Johnson did not expressly challenge the vehicle search as outside the scope of a lawful search incident to arrest of a person handcuffed in the back of a patrol car. The trial court denied Johnson's suppression motion.

¶9 At Johnson's first trial, the jury convicted him of obstructing a law enforcement officer, acquitted him of

---

[5] The record on appeal does not identify the crimes underlying these warrants.

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

possession of a dangerous weapon, and failed to reach a verdict on the three other counts (two counts of unlawful possession of a controlled substance and one count of unlawful use of drug paraphernalia). At his second jury trial, the trial court relied on its previous denial of Johnson's suppression motion. The jury convicted Johnson of all three remaining charges. He appeals.

## ANALYSIS

### I. TRAFFIC STOP

¶10 Johnson argues on appeal that Williams unlawfully seized him by parking his patrol car behind the vehicle in which Johnson was a passenger. Br. of Appellant at 9. In support, he cites the Fourth Amendment; article I, section 7 of Washington's constitution; and *State v. Day*, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). The State responds that Williams' conduct before discovering Johnson's outstanding warrants was a permissible "social contact." Br. of Resp't at 6-12. Johnson's argument fails.

### A. Standard of Review

¶11 We review a trial court's denial of a CrR 3.6 suppression motion "to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law." *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Unchallenged findings of fact are verities on appeal.[7] *State v. Balch*, 114 Wn. App. 55, 60, 55 P.3d 1199 (2002). We review de novo conclusions of law, "including mischaracterized 'findings.'" *Cole*, 122 Wn. App. at 323. We defer to the fact finder on witness credibility issues. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

---

[7] Johnson challenges only the trial court's seventh finding that Williams made a social contact with the vehicle's occupants and did not activate his emergency lights or siren.

¶12 Whether a law enforcement officer has seized a person is a mixed question of law and fact. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). The defendant bears the burden of proving that an unlawful seizure occurred. *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998). To determine whether a seizure occurred, Washington courts use an objective standard to examine the police officer's actions.[8] *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003). Not every encounter between a law enforcement officer and an individual amounts to a seizure. *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985)).[9]

### B. No Seizure

¶13 Wash. Const. art. I, § 7 permits social contacts between police and citizens.[10] *Young*, 135 Wn.2d at 511. Thus, an officer's mere social contact with an individual in

---

[8] For example, under Wash. Const. art. I, § 7, a person is seized only when (1) a police officer uses physical force or a show of authority to restrain the person's freedom of movement and (2) a reasonable person would not have believed he was free to leave, or free to decline the officer's request and to terminate the encounter, given all the surrounding circumstances. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003).

[9] *See also United States v. Mendenhall*, 446 U.S. 544, 551-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) (not every encounter between a police officer and a private individual constitutes an official intrusion requiring objective justification):

> [C]haracterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.

*Mendenhall*, 446 U.S. at 554.

[10] *See State v. Mote*, 129 Wn. App. 276, 282, 120 P.3d 596 (2005). It is well established that " '[e]ffective law enforcement techniques not only require passive police observation, but also necessitate their interaction with citizens on the streets.' " *State v. Tucker*, 136 N.J. 158, 167-68, 173, 642 A.2d 401 (1994) (police are more than "mere spectators") (quoting *People v. Mamon*, 435 Mich. 1, 457 N.W.2d 623, 628 (1990)); *Young*, 135 Wn.2d at 511-12. Police are permitted to engage persons in conversation and to ask for identification even in the absence of an articulable suspicion of wrongdoing. Police officers must be able to approach citizens and to inquire about whether they will answer questions as part of the officers' "community caretaking" function. *State v. Nettles*, 70 Wn. App. 706, 712, 855 P.2d 699 (1993).

a public place with a request for identifying information, without more, is not a seizure.[11] *Young*, 135 Wn.2d at 511; *Armenta*, 134 Wn.2d at 11. The Washington Supreme Court recently clarified the limitations of a "social contact" in *Harrington*, 167 Wn.2d 656. That court held that a series of police actions that might pass constitutional muster separately, may, when viewed cumulatively, constitute an impermissible progressive intrusion into a person's private affairs and, thus, an unlawful seizure. *Harrington*, 167 Wn.2d at 660. An officer asked Harrington to remove his hands from his pockets. A second officer arrived and stood nearby. And, of particular significance, the first officer asked Harrington for permission to pat him down. *Harrington*, 167 Wn.2d at 669-70 ("When [the first officer] requested a frisk, the officers' series of actions matured into a progressive intrusion substantial enough to seize Harrington."). Here, in contrast, the degree of officer intrusion was less because contact was limited to questions about the vehicle occupants' presence in the disabled parking spot and a request for identification.[12]

¶14 When an officer subjectively suspects the possibility of criminal activity but does not have suspicion justifying an investigative detention (*Terry*[13] stop), officer contact does not constitute seizure. *O'Neill*, 148 Wn.2d at 574-75.

---

[11] In contrast, our Supreme Court has articulated a "nonexclusive list" of police actions likely resulting in seizure, which includes the " 'threatening presence of several officers,' " the police officer's physically touching the person, and the police officer's " 'use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Harrington*, 167 Wn.2d at 664 (internal quotation marks omitted) (quoting *Young*, 135 Wn.2d at 512). The record before us on appeal includes none of these factors here.

[12] Based on similar facts, Division Three of this court held that an encounter was not a seizure because the officer's intrusion was less than that in *Harrington*:

Here, no second officer joined Officer Walker, and his intrusions into Mr. Bailey's privacy progressed only as far as the second stage of *Harrington*, plus the additional intrusion of asking for Mr. Bailey's identification. And significantly, Mr. Bailey volunteered that he may have had an outstanding warrant as soon as he handed Officer Walker his identification.

*State v. Bailey*, 154 Wn. App. 295, 301, 224 P.3d 852 (2010) (citing *Harrington*, 167 Wn.2d at 660-62).

[13] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Thus, it is not a seizure when a law enforcement officer parks behind a vehicle parked in a public place,[14] asks an occupant to roll down a window, questions him, and requests identification.[15] *See O'Neill*, 148 Wn.2d at 572, 577, 579-81.

¶15 Here, the trial court found credible Williams' testimony that he had parked his patrol car approximately 10 to 15 feet behind the vehicle illegally parked in the disabled spot and that Williams did not activate his emergency lights or siren. Williams was the only officer on the scene.[16] He did not demand identification from Johnson, nor did he ask Johnson to step out of the parked vehicle until after he (Williams) had learned about Johnson's outstanding arrest warrants. Until this point, a reasonable person would have felt free to leave under the circumstances. Accordingly, we hold that Williams lawfully contacted Johnson and asked for his identification when Williams found the vehicle in which Johnson was a passenger illegally parked in a spot reserved for persons displaying disability authorization.

## II. Vehicle Search Incident to Arrest

¶16 Citing *Gant*, Johnson argues for the first time on appeal that the search of the vehicle incident to his arrest

---

[14] Although vehicle passengers have a greater sense of security and privacy than do pedestrians, Wash. Const.'s art. I, § 7 distinction between these differing expectations of privacy disappears when a vehicle is parked in a public place. *State v. Rankin*, 151 Wn.2d 689, 697, 92 P.3d 202 (2004); *O'Neill*, 148 Wn.2d at 579.

[15] Johnson cites *Day* for the proposition that an officer's mere suspicion that a civil infraction has been committed does not justify an investigative detention. But our Supreme Court (1) expressly stated that "an officer may approach and speak with the occupants of a parked car even when the observed facts do not reach the *Terry* stop threshold"; and (2) made clear that it was deciding only whether such suspicion alone justified an investigative detention. *Day*, 161 Wn.2d at 898 n.7 (citing *O'Neill*, 148 Wn.2d at 577). Here, the issue is whether Williams seized Johnson before arresting him, and *Day* does not apply.

[16] Other than Johnson's own testimony at the suppression hearing, which the trial court found not credible, nothing in the record supports Johnson's Statement of Additional Grounds (SAG) claim that "[t]here was a school patrol officer at the scene backing up Officer Williams. It was not mentioned in the initial report. When I brought it to the court and my attorney's attention nothing was ever done about it." SAG at 1.

on his outstanding warrants violated the Fourth Amendment. The State responds that (1) he waived this argument by failing to challenge the vehicle search below, (2) the evidence was admissible under the Fourth Amendment "good faith" exception to the exclusionary rule, and (3) the evidence should not be excluded under our state constitution's article I, section 7 exclusionary rule. We agree with the State.

¶17 Below, Johnson challenged only the legality of Williams' initial contact with the parked vehicle. Johnson did not challenge the scope, the propriety, or the legality of the search incident to his arrest on his outstanding warrants. We hold that he failed to preserve the vehicle search issue for the reasons we stated in *State v. Millan*, 151 Wn. App. 492, 500, 212 P.3d 603 (2009), *review granted*, 168 Wn.2d 1005, 226 P.3d 781 (2010).[17] *Accord State v. Nyegaard*, 154 Wn. App. 641, 226 P.3d 783 (2010); *see also* ER 103(a)(1) (error may not be predicated on ruling admitting evidence absent a timely motion stating the specific ground for the objection); *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995) (defendant waives right to challenge admission of evidence gained in an illegal search or seizure by failing to move to suppress the evidence at trial).[18] Accordingly, we uphold the trial court's denial of Johnson's motion to suppress without addressing the State's other arguments.

## III. Statement of Additional Grounds

¶18 In his Statement of Additional Grounds,[19] Johnson contends that (1) Williams' incident report failed to mention

---

[17] In contrast to *Millan*, see *State v. Snapp*, 153 Wn. App. 485, 495, 219 P.3d 971 (2009), in which "Snapp challenged the scope of the vehicle search incident to arrest below. . . . Thus, Snapp preserved this issue for appeal."

[18] *But see State v. McCormick*, 152 Wn. App. 536, 540, 216 P.3d 475 (2009) (defendants may raise an admissibility of evidence challenge on appeal without having done so in the trial court, following a change in the law under *Gant*). *See also State v. Harris*, 154 Wn. App. 87, 94, 224 P.3d 830 (2010); *State v. Burnett*, 154 Wn. App. 650, 228 P.3d 39 (2010).

[19] RAP 10.10(a).

that a school patrol officer was backing up Williams, a fact that both the trial court and defense counsel also failed to address; (2) defense counsel declined Johnson's request to take photographs of the parking lot and to file a motion for the jury to view it; and (3) the trial court denied Johnson's request for a new attorney. These contentions do not support reversal of Johnson's convictions.

¶19 With respect to the first contention, although Johnson testified during the suppression hearing that "there was two of them," nothing else in the record before us supports this assertion. VTP (Aug. 4, 2008) at 35. And credibility is a matter for the fact finder, here, the suppression hearing judge. *Thomas*, 150 Wn.2d at 874. Johnson's second and third contentions concern matters outside the record, which we cannot consider on direct appeal. *See* RAP 9.1(a).

¶20 We affirm.

QUINN-BRINTNALL, J., concurs.

¶21 HOUGHTON, J.* (concurring and dissenting) — I concur in part and dissent in part. I agree with the majority's analysis on the traffic stop and seizure, but for the following reasons I dissent from its analysis on the search incident to arrest.

¶22 In *State v. McCormick*, Judges Houghton (writing), Armstrong (concurring), and Penoyar (concurring) held that defendants may raise an admissibility of evidence challenge on appeal without having done so in the trial court, following a change in the law under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009). *State v. McCormick*, 152 Wn. App. 536, 540, 216 P.3d 475 (2009). The *McCormick* opinion called into question another panel's decision in *State v. Millan*, 151 Wn. App. 492, 212

---

* Judge Elaine Houghton is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

P.3d 603 (2009), *review granted*, 168 Wn.2d 1005, 226 P.3d 781 (2010), which denied a similar challenge on appeal.[20]

¶23 Following *McCormick*, in *State v. Harris*, another panel, Judges Armstrong (writing), Penoyar (concurring), and Quinn-Brintnall (dissenting), declined to hold that a defendant waived his right to challenge a search under *Gant* by failing to bring a then meritless motion to suppress before the pre-*Gant* trial.[21] *State v. Harris*, 154 Wn. App. 87, 99, 224 P.3d 41 (2010). More recently, in *State v. Burnett*, 154 Wn. App. 650, 228 P.3d 39 (2010), a third panel, Judges Penoyar (writing), Houghton (concurring), and Van Deren (concurring), followed *McCormick*. To date, three judges, Judges Quinn-Brintnall, Bridgewater, and Hunt, have followed the *Millan* analysis and four judges, Judges Houghton, Armstrong, Van Deren, and Penoyar, have followed the *McCormick* and *Harris* analyses.

¶24 Under RCW 2.06.040, the Court of Appeals hears cases in three-judge panels. Because we do not sit en banc, our opinions on the issue of waiver in post-*Gant* admissibility of evidence challenges lack uniformity. Justice demands that the outcome of similar cases on the same issue should not depend on the composition of randomly selected three-judge panels. This lack of uniformity should be addressed by our Supreme Court as soon as practical.

¶25 Based on the reasoning in *McCormick*, *Harris*, and *Burnett*, I dissent.

---

[20] The *Millan* panel, Judges Quinn-Brintnall (writing), Bridgewater (concurring), and Hunt (concurring), also denied a similar challenge in *State v. Cardwell*, 155 Wn. App. 41, 226 P.3d 243 (2010).

[21] In *State v. Nyegaard*, 154 Wn. App. 641, 646, 226 P.3d 783 (2010), another panel, Judges Hunt (writing), Bridgewater (concurring), and Houghton (dissenting), held that waiver occurred under similar circumstances.