# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,      )
                          )    No. 69913-0-I
              Respondent, )
                          )    DIVISION ONE
        v.                )
                          )
STEVEN SANDOZ,            )    UNPUBLISHED OPINION
                          )
              Appellant.  )    FILED: April 21, 2014

SPEARMAN, C.J. — Steven Sandoz was charged with a violation of the Uniform Controlled Substance Act, possession of cocaine. Prior to trial he moved to suppress evidence of his incriminating statements and the cocaine found in his possession during a search incident to his arrest. He argued that his initial detention was unlawful because the arresting officer lacked the reasonable and articulable grounds to believe he was engaged in criminal activity and therefore, any evidence obtained subsequently was inadmissible at his trial. The trial court denied the motion and after a bench trial on stipulated facts, he was found guilty as charged. Sandoz appeals, contending that the trial court erred in denying his motion to suppress. We conclude his claim lacks merit and affirm.

FACTS

Late in the evening on May 23, 2012, King County Sheriff Deputy Christopher Przygocki observed a white Jeep illegally parked in front of an apartment building known for an unusually high number of documented criminal incidents. As a result of the frequent criminal activity at the location, the owner of the building had authorized police officers to cite anyone for trespass if they did not belong on the property, and the building had been designated as part of a problem solver project for added emphasis to stop crime in the area. Przygocki knew the vehicles owned by each of the tenants and did not recognize the Jeep. When he drove by, the driver of the Jeep "slumped down" so he parked in a nearby cul-de-sac 20 yards away for further observation. Verbatim Report of Proceeding (VRP) (1/3/13RP) at 18.

When nobody entered or exited the vehicle for 15 minutes, Deputy Przygocki exited his patrol car and contacted the driver. Przygocki asked the driver what he was doing, and the driver responded that his friend had called him for a ride. The driver did not answer Przygocki's question about why he slumped down. Then Przygocki walked around to the passenger side of the vehicle and noticed Steven Sandoz walking out of an apartment toward the Jeep with his eyes down and his hands in his pocket. Przygocki knew from previous experience that the tenant of the apartment Sandoz exited had a history of convictions for possession of controlled substances with intent to distribute. When Sandoz saw Przygocki, his "eyes got big, and he entered the Jeep." VRP (1/3/13RP) at 21. Przygocki asked Sandoz what he was doing, and Sandoz stated the driver gave him a ride to the apartment to collect $20 from the resident of the

apartment. The deputy believed the explanations contradicted each other. Przygocki also stated that Sandoz was visibly shaking, and his face looked pale and thin.

Based on the information he had obtained, Przygocki asked Sandoz to step out of the Jeep to talk in private. Sandoz complied, and the two walked to the back of the Jeep. Had Sandoz declined, Przygocki stated he would have detained him and investigated for drug-related loitering. Once outside, Sandoz initially told Przygocki that he was at the apartment to collect $20 from the tenant, but then admitted he had a drug problem and a crack pipe in his pocket. Przygocki arrested Sandoz for possession of drug paraphernalia and felt an object in Sandoz's groin area during a search incident to arrest. Przygocki advised Sandoz of his rights and waited for another officer to arrive before removing the object, which turned out to be two small envelopes of cocaine. Sandoz admitted to purchasing narcotics from the tenant and claimed the tenant had set him up. In transit, Sandoz admitted he had a drug problem, asked for help, and told Przygocki he would be coming off narcotics.

The State charged Sandoz with possessing cocaine, a violation of the Uniform Controlled Substance Act.[1] In a pretrial motion pursuant to CrR 3.5 and 3.6, Sandoz argued his initial detention was illegal and, as a result, all of his statements and the evidence seized from him subsequent to his detention should be suppressed. CP 6-15. In denying the motion, the trial court concluded as follows:

> The deputy had reasonable and articulable suspicion to conduct a
> Terry[2] stop of the defendant, when he asked to talk to the defendant
> privately at the back of the vehicle. The area that this occurred was
> an area of extremely high drug activity, known to the officer based
> on objective 911 calls reporting drug activity and investigations into

---

[1] RCW 69.50.4013

[2] Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

drug dealing. The deputy was aware that occupants of the apartment complex, specifically the one apartment the defendant exited, was known as a place where drug deals occurred.... The deputy had express authority from the complex owner people (sic) to trespass people who were non-occupants loitering at the complex. The Jeep seen did not belong to any occupants of the complex. The driver of the Jeep slouched down when the deputy drove past. The driver and the defendant had conflicting stories as to why they were in the area. The defendant looked surprised when he saw the deputy. The defendant was visibly shaken and pale when the deputy initiated contact with him, At this point, the deputy had reasonable and articulable suspicion that the defendant was engaging in illegal drug activities.

Clerk's Papers at 53.

Following the court's ruling on the motion, Sandoz waived his right to a jury trial and submitted the case to the bench on stipulated facts. The trial court found him guilty. Sandoz appeals, arguing the trial court erred in denying his motion to suppress. We affirm.

## DISCUSSION

A seizure occurs under the Washington constitution when considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority. (Citing State v. O'Neill, 148 Wn.2d 564, 574, 62 P.3d 489 (2003)). The determination is based on a purely objective look at the actions of the law enforcement officer. State v. Young, 135 Wn.2d 498, 512, 957 P.2d 681 (1998). The relevant question is whether a reasonable person in the defendant's position would feel that he or she was being detained. O'Neill, 148 Wn.2d at 581. On the other hand, if a reasonable person would feel free to walk away from the officer, the encounter does not

4

amount to a seizure. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

A law enforcement officer's request that a person exit a vehicle constitutes a seizure because a reasonable person in that circumstance would not feel free to decline the request. See O'Neill, 148 Wn.2d at 581 (finding an officer did not show sufficient authority for a seizure until he asked the driver to exit a parked car); State v. Johnson, 156 Wn. App. 82, 92, 231 P.3d 225 (2010) review granted 172 Wn.2d 1001, 257 P.3d 1112 (2011) (noting that a seizure did not occur when the officer did not ask a passenger to step out of a car until the officer knew of the passenger's outstanding warrants); State v. Watkins, 76 Wn. App. 726, 729, 887 P.2d 492 (1995) (asking the passenger to exit a car during a traffic stop constituted a seizure). Thus, Sandoz was seized when Przygocki asked him to exit the vehicle.

Sandoz argues that the seizure was unlawful because Przygocki lacked reasonable and articulable grounds to believe that Sandoz had engaged or was about to engage in criminal activity. We disagree. Article 1, section 7 of the Washington Constitution provides "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This language provides more protection than the Fourth Amendment and creates nearly an absolute bar on warrantless seizures. State v. Valdez, 167 Wn.2d 761, 772, 224 P.3d 751 (2009). For a warrantless seizure to be lawful, the State must show by clear and convincing evidence that the seizure was justified by one of the limited exceptions to the warrant requirement. State v. Doughty, 170 Wn.2d 57, 62, 239 P.3d 573 (2010).

Under Terry, brief investigatory stops are one such exception to the general rule against warrantless seizures. See also State v. Acrey, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). A Terry stop is proper when an officer's reasonable suspicion that the stopped person has been or is about to be involved in a crime is grounded in specific and articulable facts. Id. at 747. "The reasonableness of the officer's suspicion is determined by the totality of the circumstances known to the officer at the inception of the stop." State v. Rowe, 63 Wn. App. 750, 753, 822 P.2d 290 (1991) overruled in part on other grounds by State v. Bailey, 109 Wn. App. 1, 3, 34 P.3d 239 (2000). The officer's training, the location of the stop, the conduct of the person detained, the purpose of the stop, the amount of physical intrusion, and the length of time the suspect is detained are all proper to consider in determining the reasonableness of the stop. Acrey, 148 Wn.2d at 747.

Deputy Przygocki properly seized Sandoz based on the totality of the circumstances at the time of the seizure. As the trial court found, Przygocki had extensive knowledge of frequent drug and other criminal conduct occurring at the apartment complex, and Sandoz exited the apartment of a convicted drug dealer. For six months, Przygocki had been working on a problem solver project involving the complex and had authority from the owner to trespass anyone that did not belong on the property. Przygocki saw the driver in the Jeep slump down in his seat as the deputy drove by, and the Jeep was illegally parked in front of the building for 15 minutes. Once Sandoz exited the apartment, Przygocki noticed that Sandoz appeared nervous at the sight of the officer and was visibly shaking. His face also looked pale and thin. The driver and Sandoz offered conflicting stories to explain their presence at the complex...

Considering all the information he had ascertained, Przygocki had reasonable and articulable grounds to suspect that Sandoz was engaging in illegal drug activities.

Sandoz's reliance on Doughty and Gleason is misplaced. In Doughty, the court held that a seizure was improper when the defendant left a suspected drug house late at night after staying for only two minutes. 170 Wn.2d 57, 63, 239 P.3d 573 (2010). But the arresting officer in Doughty relied on "incomplete observations" and only used neighbor complaints to identify the residence as a drug house. Id. at 64. With more information about why the drug house was designated as such, the officer's conduct may have been proper. Id. at 65 (Chambers, J., concurring). Here, Przygocki knew the tenant was a convicted drug dealer and the complex had been a part of the problem solver project because of the frequent criminal activity. His personal knowledge of the circumstances provides specific, articulable grounds for his suspicion that Sandoz was engaged in illegal drug activity.

Likewise, Gleason is distinguishable as well. In Gleason, the arresting officers relied "solely" on racial incongruity in seizing the defendant. 70 Wn. App. 13, 18, 851 P.2d 731. In fact, "there was no evidence Mr. Gleason was acting suspiciously, he was not carrying any unusual objects, and the officers admitted there was no basis to arrest him for loitering." Id. Here, Przygocki observed Sandoz leave the apartment of a known drug dealer. Sandoz looked nervous, thin and pale, and was visibly shaking when Przygocki made contact with him and Sandoz's explanation for being at the apartment complex contradicted the driver's explanation. Based on the totality of the

circumstances, Deputy Przygocki had reasonable and articulable grounds to believe that Sandoz was engaged in illegal drug activity.[3]

Affirmed.

Spearman, C.J.

WE CONCUR:

Verellen, A.C.J.                         Leach, J.

---

[3] Sandoz also contends for the first time on appeal that the Przygocki lacked probable cause to arrest Sandoz because mere possession of drug paraphernalia is not a crime under the Revised Code of Washington. As a general rule, appellate courts will not consider a claim of error which was not raised in the trial court. RAP 2.5(a). An exception to the general rule is where the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). For this exception to apply, "[t]he defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review." State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Although, Sandoz's claim arguably affects Sandoz's rights under the Fourth Amendment to the federal constitution and article I, section 7 of our state constitution, Sandoz makes no argument, and we perceive of none, that the claimed error is manifest in this case. Accordingly, we decline to consider it.