
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,    )
    )   No. 70557-1-I
    Respondent,    )
    )   DIVISION ONE
    v.    )
    )   UNPUBLISHED OPINION
ROBERT JOHN TROXCLAIR, JR.,    )
    )
    Appellant.    )   FILED: September 22, 2014
    )

APPELWICK, J. — Troxclair appeals his conviction for possession of methamphetamine. He argues that the methamphetamine was discovered pursuant to an unlawful seizure and should have been excluded. He contends that the trial court violated CrR 6.1(d) by failing to enter written findings of fact and conclusions of law in support of its guilty finding. We affirm.

## FACTS

On February 16, 2012, shortly before midnight, Officer David Deach was on patrol in the area of North Third Street and West Lawrence in Mount Vernon, Washington. Officer Deach saw a car parked in the area that caught his attention. Officer Deach was suspicious, because he was familiar with the area but had never seen the particular car before. He was aware of stolen and prowled vehicles in the area.

Officer Deach noticed Anthony Franulovich standing outside the car next to the open driver's door. Officer Deach drove up to the car, rolled down his window, and engaged in conversation with Franulovich. When Officer Deach approached the car, he

did not have his lights or siren on. Officer Deach then parked his squad car a couple of car lengths away from the car and returned to ask Franulovich some questions.

Officer Deach announced his location information over the radio indicating that he was dealing with a "status three." A "status three" means an officer is making a request for cover, but there is no emergency.

After speaking with Franulovich, Officer Deach looked inside the back seat of the car and saw John Troxclair. Officer Deach testified that Troxclair was either passed out or asleep. Troxclair testified that he was asleep. Officer Deach knocked on the closed window and asked Troxclair if he would talk to him. Officer Deach did not yell at Troxclair. Officer Deach did not order Troxclair to get out of the car. Troxclair voluntarily exited the vehicle and stood next to it.

Officer Deach asked Troxclair for his name and why he was in the area. Troxclair told Officer Deach his name. During the interaction, Troxclair was never told that he was not free to leave. Officer Deach did not display physical restraint or force toward Troxclair.

Officer Deach ran Troxclair's name through dispatch and found that there was a warrant for his arrest. Officer Deach then arrested Troxclair, searched him, and found a baggie of methamphetamine and drug paraphernalia.

At some point prior to or concurrent with Troxclair's arrest and in response to Officer Deach's "status three" request, Officers Zachary Wright and Edgar Serrano arrived at the scene. One of the officers might have had his flashing lights on. But, none of the officers had their siren on. None of the officers' cars were blocking the car Troxclair was in.

2

Upon arrival, Officer Wright spoke with Franulovich. Officer Serrano contacted neither Franulovich nor Troxclair, but kept his attention on the surrounding area to ensure the safety of Officers Deach and Wright.

The State charged Troxclair with possession of a controlled substance other than marijuana – methamphetamine. Troxclair moved to suppress the evidence as a result of an unlawful search and seizure under the United States and Washington constitutions. In his motion to suppress, Troxclair argued that he was seized from the moment Officer Deach awakened him and requested to speak with him, without the required reasonable articulable suspicion. Troxclair contended that the manner in which Officer Deach asked him to get out of the car was so authoritative that he felt he had no choice but comply.

The trial court denied Troxclair's motion. It found Troxclair voluntarily stepped out of the car, and was free to leave up until the moment Officer Deach learned of the warrants. The trial court found Troxclair guilty at a stipulated facts trial on June 19, 2013.

DISCUSSION

I. Unlawful Seizure

Troxclair argues that the trial court erred in denying his motion to suppress. He contends that Officer Deach seized him by asking to speak with him through the closed window of the car. Troxclair claims that by asking to speak with him through a closed window, Officer Deach left him no other choice but to step out of the car. He maintains that this was effectively a request to step out of the vehicle and that a request to step out of a vehicle without reasonable articulable suspicion is a seizure under Washington law.

When reviewing the trial court's denial of a motion to suppress, we ask whether substantial evidence supports the challenged findings of facts and whether the findings

support the trial court's conclusions of law. State v. Gibson, 152 Wn. App. 945, 951, 219 P.3d 964 (2009). Unchallenged findings of fact become verities on appeal. Id. Troxclair has not challenged any of the trial court's findings of fact. We will therefore determine whether those findings support the court's conclusions of law. State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). We review the conclusions of law de novo. State v. Hinton, 179 Wn.2d 862, 867, 319 P.3d 9 (2014).

At the conclusion of the CrR 3.6 hearing, the trial court entered the following conclusions of law: (1) Troxclair voluntarily exited the vehicle and voluntarily provided his name; (2) Troxclair was free to leave up until his arrest on the warrants; and (3) The motion to suppress the evidence seized from Troxclair's person as a result of the search incident to his arrest on the warrants is denied. Troxclair maintains that the trial court erred in denying his motion to suppress, because he was unlawfully seized.

A seizure occurs when, "'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority.'" State v. Harrington, 167 Wn.2d 656, 663, 222 P.3d 92 (2009) (quoting State v. Rankin, 151 Wn.2d 689, 694, 92 P.3d 2002 (2004)). This is an objective standard that looks to the law enforcement officer's actions and asks whether a reasonable person in the individual's position would feel he or she was being detained. Id. If a reasonable person under the circumstances would not feel free to walk away, the encounter is not consensual. Id.

In State v. Armenta, the court recognized that not every encounter between an officer and a citizen constitutes a seizure. 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). The law in Washington is well settled that where an officer commands a person to a halt or

4

demands information from that person, a seizure occurs. State v. O'Neill, 148 Wn.2d 564, 577, 62 P.3d 489 (2003). But, no seizure occurs where an officer approaches an individual in public and requests to talk to him or her, engages in conversation, or requests identification, so long as the person involved need not answer and may walk away. Id. at 577-78. The officer's questions need not be purely conversational. See State v. Thorn, 129 Wn.2d 347, 352, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003). For example, in Thorn, the court found that the defendant was not seized when an officer approached the defendant in a parking lot and asked, "'Where is the pipe?'" Id. at 349, 354. Further, the fact that an individual was in a parked car in public instead of on foot at the time of the encounter is not a significant factor in determining whether he or she felt free to leave, to terminate the encounter, to refuse to speak with the officer, or to otherwise go about his or her business. Id. at 353.

In Washington, courts have found that requesting an individual to step out of a vehicle is the point when a police encounter transforms into a seizure. See, e.g., State v. Johnson, 156 Wn. App. 82, 92, 231 P.3d 225 (2010), vacated on remand on other grounds, 164 Wn. App. 486, 273 P.3d 466 (2011); O'Neill, 148 Wn.2d at 570. In Johnson, a police officer parked his patrol car ten to fifteen feet behind an illegally parked vehicle. 156 Wn. App. 92. The officer did not activate his emergency lights or sirens. Id. He walked up to the driver and asked why she was parked in the certain spot. Id. at 87. The officer did not demand identification from Johnson, nor did he ask her to step out of the parked vehicle until after he had learned that she had outstanding warrants. Id. at 92. The court found that until that point no seizure occurred, because a reasonable person would have felt free to leave under the circumstances. Id.

In O'Neill, an officer pulled up behind a car parked in front of a closed store after dark. O'Neill, 148 Wn.2d at 572. The officer activated his spotlight and determined someone was in the car. Id. He approached the driver's side of the car, shined a flashlight in the driver's face, and asked him to roll the window down, which he did. Id. The officer asked what he was doing there. Id. The officer then asked for identification, registration, and insurance papers. Id. The driver indicated he had no identification on him and that his license was revoked. Id. When he produced only a registration document, the officer asked him to step out of the car. Id. The court found that a seizure did not occur until the officer asked O'Neill to step out of the vehicle. Id. at 570. The court held that it was not until the officer ordered O'Neill out of the vehicle that a reasonable person would not have felt free to leave or free to end the encounter. Id. at 598 (Chambers, J., concurring in part, dissenting in part).

Here, distinguishable from Johnson and O'Neill, where the defendants were explicitly asked by law enforcement officials to exit their vehicles, Officer Deach made no such request. Officer Deach asked if he could speak with Troxclair. This is not equivalent to requesting that Troxclair step out of the vehicle. Troxclair could have spoken with Officer Deach through the window, opened the car door and spoken with him from inside the car, exited the car and walked away, or declined to speak with Officer Deach altogether. Troxclair's choice to exit the vehicle was entirely voluntary.

Nor did Officer Deach otherwise display a show of authority sufficient to result in a seizure. In United States v. Mendenhall, the United States Supreme Court provided

6

examples of indicia that may amount to a seizure.[1] 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). These included: the threatening presence of several officers; the display of a weapon by an officer; physical touching of the citizen's person; and the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Id.

Here, Officer Deach and the other officers did not make a show of authority amounting to a seizure. Although there were multiple officers present, there is no evidence that the other officers' presence was threatening. In fact, Officer Wright and Officer Serrano never engaged in contact with Troxclair. Further, there is no evidence that Officer Deach displayed a weapon, physically touched Troxclair, or used a language or tone signaling to Troxclair that he had to comply with Officer Deach's request to speak with him.

Troxclair was not seized until he was arrested on the warrants. The trial court did not err in denying Troxclair's motion to suppress.

II.    Written Findings of Fact and Conclusions of Law

Troxclair claims the trial court violated CrR 6.1(d) by failing to enter written findings of fact and conclusions of law in support of its guilty finding. CrR 6.1(d) provides that in a case tried without a jury, the court shall enter written findings of fact and conclusions of law. State v. Head, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). The purpose of requiring written findings and conclusions is to ensure efficient and accurate appellate review. State v. Cannon, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). Although the

---

[1] Previous Washington cases have adopted the Mendenhall test. See State v. Young, 135 Wn.2d 498, 509, 957 P.2d 681 (1998).

practice of submitting late findings and conclusions is disfavored, they may be submitted and entered even while an appeal is pending if the defendant is not prejudiced by the belated entry of findings. State v. McGary, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984).

With regard to prejudice, the court will consider elements such as whether the appeal was delayed, whether the late-filed findings and conclusions were "tailored" to meet issues raised in the appeal, and whether defense counsel was able to present well-articulated arguments on appeal. See Cannon, 130 Wn. 2d at 330; State v. Portomene, 79 Wn. App. 863, 864-65, 905 P.2d 1234 (1995).

The trial court denied Troxclair's motion to suppress and entered findings of fact and conclusions of law at the CrR 3.6 hearing on June 12, 2013. Troxclair was convicted of possession of methamphetamine on June 19, 2013. He filed his opening appellate brief on December 18, 2013. At that time, the trial court had not yet filed its written findings of fact and conclusions of law for Troxclair's stipulated facts trial. The trial court entered its written findings of fact and conclusions of law on February 12, 2014. The State filed its brief on March 24, 2014.

There is no evidence that Troxclair's appeal was delayed, that the late filed written findings were tailored to the arguments made on appeal, or that Troxclair's counsel was unable to make arguments supporting his claims. Because of the nature of the appeal, the findings of fact and conclusions of law from the CrR 3.6 hearing were much more salient to the preparation of the appeal than the late filed findings and conclusions from the June 19, 2013 trial. Troxclair's counsel had the CrR 3.6 findings and conclusions at his disposal. Therefore, the trial court's delayed entry of the findings and conclusions did not prejudice Troxclair. Because the trial court has entered its written findings and

8

conclusions since Troxclair filed his brief, remand for entry of correct written findings and conclusions is not necessary. See Head, 136 Wn.2d at 622-23 (when trial court failed to enter written findings and conclusions, remand was the proper course of action).

We affirm.

_Appelwick, J_

WE CONCUR:

_Schindler, J_  _Cox, J._

9